Our next case is United States v. Chavez-Morales, No. 17-2124. Counsel? Your Honor, Counsel, my name is John Butcher. I'm an Assistant Federal Public Defender. I represent Mr. Chavez-Morales. We're requesting that this Court reverse the sentence and remand us back to the District Court for a new sentencing. We do not believe the sentencing court reasonably considered the mitigating factors in this case in coming to its conclusion for an upward departure. We would note that initially Mr. Chavez-Morales re-entered the United States. He was offered a fast-track plea agreement, which he accepted. He pled guilty to the fast track. He was looking at a 9-15 month range. The District Court rejected that, which was within the Court's right to do so. Initially, there was some indication that the Court would accept a guideline sentence. Ultimately, Mr. Chavez-Morales pled guilty to re-entry with no plea agreement. His sentencing range was 21 to 27 months. The Court indicated at that point that it intended to go upward, and it departed up one-third of the top end of the range to a sentence of 36 months. We believe that the Court did not reasonably consider Mr. Chavez-Morales' sentencing arguments as required, and thus the sentence must be remanded and sent back to the District Court for a new sentencing. We also believe the Court erred under plain error by imposing the maximum term of supervised release in violation of 5D1.1 of the guidelines and the application notes, as well as the Section 3853 of the statutes. Your Honors, in this case, Mr. Chavez, the Court focused on the fact that this was Mr. Chavez-Morales' fifth re-entry, that the Court found and departed upward because it found an objective disrespect to the laws of the United States. When the trial counsel objected to that and pointed out that Mr. Chavez-Morales did not, in fact, have a disrespect to the laws of the United States, but was driven by extreme economic motivation, the Court accepted that and agreed that there was no substantive disrespect for the law, but still found objectively that there was a disrespect for the law, and saying enough is enough, then departed upward and imposed a sentence of 36 months, nine months above the top end of the guideline. We believe that this reflects that the Court did not meaningfully consider the vast amount of mitigation argument in this case. First of all, the nature of the upward departure justification being an objective disrespect to the law is really a fiction. It doesn't really go to a 35-50 rate factor. There's some sort of speculation what that is. But when the Court acknowledged that subjectively he did not have disrespect for the law, but still found it that because of this, and this is why we're going to do this, thus we think that is the error, that he did not meaningfully consider the overwhelming mitigation, and more importantly, that Mr. Chavez-Morales did not have a disrespect for the law of the United States. He was driven by desperation or duress, and that is why he reentered the United States. And thus, once again, we do not challenge the Court rejecting the ---- Well, counsel, is it really an either-or situation? I mean, I understand that the argument was that he was coming back to help his family, that there was financial motive. But when you enter illegally five times, can't you have a motive to help your family but also disrespect the law? Well, you're ---- I mean, there doesn't have to be one single reason or one single motive, or why can't those two coexist? Well, I don't think there's any indication that he reentered the United States to thumb his nose at the United States, that somehow he's making some kind of political statement by reentering the country that the motivation was solely for economic ---- But if someone commits the same crime five times over, how is that not disrespect for law? Well, because people can commit crimes for a variety of reasons, and that's what 3558 acknowledges. But on each occasion, he was told not to do it again. I mean, this is the law, you violated it, don't do it again. And then he does it again, and it happens over and over and over. Well, once again, Your Honor, I'm not justifying him coming back to the United States. I'm not talking about justifying him. I'm just talking about whether it was permissible for this Court to determine that there was at least a disrespect for law reason for the Senate's here. Well, I don't think there is a disrespect. I don't think there is a subjective disrespect for the law, and I'm not sure there's an objective disrespect for the law, that it goes to a 35-degree sentencing factor. What our concern is, is this is not a situation where the judge gave the top end of the guideline, and we're not arguing that the judge was wrong in rejecting the fast track. So once 3553C comes into play, that is what changes this analysis, Your Honor. And that's what I think makes the Court have to more articulate and look at the mitigation reasons offered by the defense. Sort of like this is the same judge that was in Lente, and once again, this is something the Court could have done. I think the Court would be right if the judge had imposed a 27-month sentence and was in the guidelines, and that would be sufficient, and his comments, I think, would be unassailable. Well, the Court didn't ignore the financial motive to return. I counted at least two places where in the transcript where the Court addresses specifically the financial motive and talked about comparing how he could meet this motive by staying in Mexico versus coming here. So this was considered, and you're not suggesting that the Court didn't even consider the economic reason for coming back. Well, Your Honor, all I can go in, and I was not the counsel sentencing, is what the record reflects what the Court ultimately said its reasons were to do an upward departure. Yes, there was a banner between the Court and the counsel about how much he made when he was in jail, but at the end the Court just said, you know, he said enough is enough. This is his fourth, I think fifth, you know, he ultimately said fifth reentry, and that I find there's an objective disrespect to the laws of the United States. In that statement, I think that shows that there was not a reasonable weighing of mitigation factors, because the Court just said basically he came in five times, that's all I need to know, enough is enough, and I'm departing upward. Well, but aren't you making, you're not making a substantive reasonableness argument. That's correct, that was not raised in the briefs. So we really can't, I mean, he considered the financial motive and weighed it, however the Court weighed it. Can we really second-guess that decision? We're not asking this Court to second-guess the decision, we're asking it for a remand back to the district court. So, you know, we're not, we're saying that, we're asking for a remand, the Court consider our mitigation as the Court, I believe, did in Malente with this same judge. Your Honor, we also believe, I did want to get into the second part as well, about we think the supervised release was also imposed in plain error. In this case, Your Honor, the Court did not follow the guideline and, once again, depart from the guideline and impose the maximum term of supervised release. I would briefly request the Court to consider, recommend that the circuit re-review its position in Steele, because I think this case shows the need for a process that after a court pronounces a sentence, the court asks for any comment on the sentence. We believe that given the court, how the sentencing came up, there was not really an opportunity for defense counsel to really comment on the imposition of the 36 months. Once again, we acknowledge under the current precedent under Steele that we have to argue plain error, but we think the Court should consider the approach of the Sixth and Eleventh Circuit and perhaps reconsider what it will require of the sentencing court, because I think in this case some of the issues could have been cleared up if the sentencing judge had said, counsel, do you have any comment upon the sentence and had an opportunity, made a clear opportunity for the counsel to comment. Let me, in this case, I'm not even sure that would help you, because here didn't defense counsel invite the court to impose a condition of supervised release? Not ultimately how it was imposed, but, yes, the Court is correct, Your Honor, is correct that in trying to sell the lesser sentence, and I believe trying to sell the fast track, you did say, well, you could give this lesser sentence and supervised release. But once the court rejected that, and not only did it not give a guideline sentence, but gave an upper departure, I think at that point it changed that. And if you look at what 5D1.1 talks about, and also what 3853 talks about, we don't know the reason why the court imposed the supervised release in this case, and much less to give the maximum term of it. In this particular case, if it's what the government suspects, first of all, under Zanghai, we cannot assume that the reasons for the sentence are the reasons for the imposition of the supervised release. But this particular case, this sort of punishment aspect the court focused on for the imposition of the upper end of the guidelines, is not a factor the court can use under 3853 to impose supervised release. That 3553A2 is specifically not incorporated in 3853, and the reasons to look at and how a trial court should impose a supervised release. But in the note to Section 5D1.1, it makes it pretty clear that the court can consider using supervised release as an additional deterrent. In a case, even in a case where someone's going to be deported after they serve their sentence. Your Honor, that is an incomplete quote of the comment. It says deterrent and protect, for protection. In the line before that, it makes it clear that it's deterrent and protection for the public. So I think, and if you look at the reason for amendment, the commission talks about that 50% of the, if you look at the reason for amendment for why they changed that, I think it makes it clear that it has to be something more than just deterrent. Because in the reason for amendment, as well as in the guideline itself, the application says the new case is sufficient punishment for the reentry. So unless there's a reason for deterrent and protection, that's more individualized. So, for example, there was an issue of this person coming back and harassing somebody, or there's an issue of this person coming back to sell drugs. That's what I think the commission is talking about, because it's not an or, it's not a comma. It's deterrent and protect, and in the line before, deterrent and protect for the public. But once again. Counsel, on the supervised release issue, under plain error review, why is it probable the result would be any different in this case? How do you satisfy step three of plain error review? Your Honor, in this particular case, because of what the guideline talks about, and in this case, especially if this court affirms the 36 months upward departure, that the commission's whole point is proved, the commission says you don't have to pose this as a secondary hammer, because the new offense, when you get the new charge, you can punish them enough. And if the court, like the court did in this case, if the court affirms this sentence. Your Honor, I have a little less than two minutes, if I may reserve it. Thank you. May it please the court. Counsel, my name is Paul Mischlevitz, and I represent the United States in this matter. As to the defendant's first argument about the upward departure, the defendant has waived that argument by failing to plead plain error in his opening brief when it is an unpreserved objection at the district court. The United States knows that the court could exercise its discretion to review that decision, but should not. Well, but it was argued in the reply brief. What's that? Plain error was argued in the reply brief. Yes, sir, but while that gives the court the discretion to review it, the United States argues that the court should not because failing to raise it. Well, let me just, how do you square that with our decision in United States v. Zander where we said that arguing plain error in the reply brief would be sufficient? My reading, which could be inferior to the court's, is that it is sufficient to allow the court to review it should the court so choose, but does not mandate the court to review it. Well, that would be true if there was no argument at all. It's a question of whether there's enough there to entitle the appellant to plain error review, and correct me if I'm wrong, but I thought we said in Zander that making the argument in the reply brief would be enough. If Zander says that the defendant is entitled to plain error review upon arguing it in the reply, I don't ask the court to change that. But not raising it in the opening brief was a strategic decision. If I had not noticed and raised in the response brief the plain error analysis, we would be put in a position where we would have to either ask for permission to serve reply to add that argument, or the defendant would be standing here today, or Mr. Chavez would be standing here today on a more favorable standard of review, and the United States asked the court to discourage that sort of strategic behavior. Well, if we get to the issue, and I understand your argument, but if we get to the issue, could you address the argument about the district court accepting that Mr. Chavez had no subjective disrespect for the law? How do you address that issue? We need not show that the defendant, like some mustache-twirling villain, was committing the crime on purpose to show his contempt personally for the laws of the United States. I have had cases where defendants have committed a crime on purpose to draw attention to an issue. This is not that crime. But the United States position, both at sentencing and here, was that 3553A demands a sentence that is sufficient to deter. And if a person commits the same crime over and over again, they demonstrate that the prior sentences they got for that same crime of conviction have failed to deter. Either A, because they have some inability to understand choices and consequences, or B, because their motivation to return to America is so great that whatever sentence of imprisonment was imposed before simply was unable to overcome their motivation to come to the United States to try to earn more money. When deterrence is insufficient to deter, it is merely a cost. And Mr. Chavez Morales demonstrated through the conduct in his life up until this crime that all of the costs that were imposed by all of the prior district courts, one of them being the same judge in one of his earlier felony reentries, was insufficient to deter and was considered by the defendant to be merely a cost of his attempts to earn money in the United States. So when the district court says that he has objectively demonstrated a disrespect for the United States, that disrespect is not imagined, as Mr. Chavez says on page 41 of his brief, but demonstrated. Mr. Chavez demonstrates his insufficient respect for the United States every time he breaks its laws for whatever reason he breaks its laws, whatever his motivation. Counsel, under your argument, if any person has made a second entry, which obviously means they know what their law is, doesn't that mean that a forciori, all second reentries are subject to a finding that is not sufficient to deter? And if not, where is the standard that you draw the line on whether it's one, two, three, or four? My answer, Your Honor, is that all subsequent felony reentries are proof that the sentence for the prior felony reentries was insufficient to deter. Well, in terms of disrespect for the law, what triggers the holding of disrespect for the law when the court has found no subjective disrespect for the law? When a court finds that a defendant was properly advised of the penalties for committing any given offense, which always happens when there is no error in a sentencing on a prior event, whether it's for felony reentry of an illegal alien or any crime. When a district court sees that a person has been sentenced in a federal court for doing any given thing and then does that thing again, that is proof that the penalty they received the prior time was insufficient to deter their subsequent conduct and indeed that whatever respect they had for the law, subjectively or otherwise, was insufficient to guide their conduct. So, but your position at bottom is that a second reentry, a fortiori, permits the trial court to find that the second entry constitutes a disrespect for the law. Yes, sir. This is a fifth reentry, but yes. Well, I'm asking where the line is drawn, and apparently you draw the line at any reentry after a previous conviction constitutes disrespect for the law. Any reentry without permission in violation of 1326 after a prior sentencing for that same crime. So I wouldn't analyze it the same if it was an entry without inspection, misdemeanor, deportation, and then a first felony reentry. But when someone is sentenced by a federal judge for felony reentry and then is deported again and doesn't seek permission and comes back to the United States again voluntarily, yes, that demonstrates a disrespect for the law objectively. The next thing I want to say about argument one, the meaningfully considered defense proposal, is that, quote, meaningfully considered isn't the standard in the Tenth Circuit. The standard that we get from the Supreme Court is consideration. We get that in RETA against the United States. Lente from the Tenth Circuit tells us the court must address, and CERNO from the Tenth Circuit says the court must consider. If we at this circuit adopt meaningfully consider, what we are doing is inviting every subjective complaint about a failure to persuade the district court to be brought up to this court as a procedural error rather than a substantive error. I think the most important sentence in the appellant's brief on that point comes on page 23, and the sentence is, quote, the district court was unconvinced, end quote. The actual complaint that Mr. Chavez has is not that the economic motive for committing the crime wasn't brought up to the district court. It was. It wasn't that the district court didn't address it. The district court did, one time in a Socratic dialogue with counsel and one time in explaining that the defendant actually wasn't going to make more money in the United States because he got caught every time, and in jail he makes less money than he makes in Mexico. The, quote, meaningfully considered argument is really just a complaint that the district court wasn't convinced. I respectfully request this court, if it does reach the merits on argument one, find that it continues not to adopt that standard because that standard would only invite an avalanche of procedural or substantive complaints masquerading as procedural complaints. Moving on to argument two, the supervised release. There, plain error was briefed, and so we do have plain error review. The United States takes the position that the district court did not err in the first place. What about in failing to address the guideline, 5D1.1C? Wasn't it error not to address it? So the court adopted the findings of the PSR, and the findings of the PSR included, and we're looking at volume two, pages 12 to 13, that the PSR said specifically normally supervised release is not imposed. As Judge McHugh noted, that note goes on to explain there could be times when it should be imposed, and so what I do is look to volume three, page 16, at the paragraph in which Chief Judge Johnson imposed the term of supervised release, and that paragraph reads, after service of the sentence, the defendant is placed on supervised release for a term of three years, the term is unsupervised with mandatory and standard conditions, and the following special condition. The defendant shall not illegally reenter the United States, and I hope this time around the defendant will listen to what I'm telling him, and listen to what his lawyer told him. You will never, ever be authorized to come to the United States legally. So unless you want essentially to spend the rest of your life sitting in a U.S. prison cell, I strongly recommend that after you serve this sentence and you're deported, you never return to the United States, end quote. Clearly that paragraph reveals the district court's motive to deter, and while it is true that the new sentence on a potential new reentry case could also serve as punishment, we don't know if Mr. Chavez-Morales sometime in the future will return to the United States through Arizona or through Texas, several of which he's done already. I still need you to connect the dots for me. Sure. How does that satisfy the court's obligation to address the guideline? Are you just saying in so many words it did? Go ahead. If the court is required to say words such as, and I am imposing supervised release because, you can see that there's no such sentence in the record. And if the court is required to say, and I find under this note to the guideline that the specific deterrence justifying supervised release is required because, I agree there is. Is the court required to recognize that there is this guideline, but in spite of the general message of the guideline, the court has decided to impose supervised release? And here are the reasons why. Why isn't a court required to get that on the record to ensure for purposes including appellate review that the guideline was considered? We take the position that by adopting the PSR, which explicitly mentions that guideline, that he did by reference explicitly mention the guideline, but I agree he did not say sentences that are revealed in the transcript. Well, we know he didn't say that, but I think what I'm hearing from you is that's not, in your position, is that's not error. Our position is that he... That's the issue, isn't it? Was there procedural error or not? Is that what we're supposed to decide? That's prongs one and two, sir. Yes, yes, sir. Okay, well, then help us with making that decision by answering that question. Yes, sir. We take the position that by explaining his explicit deterrent motive to impose that term of supervised release, that he has invoked the deterrent permission to invoke the supervised release that Judge Fisher had. Judge McHugh mentioned being in the note, and that by incorporating the PSR and adopting the PSR that contains that guideline note, that he has given the defendant fair notice that he is aware of that guideline and how it applies. Okay, I... If we were to disagree with you, can you address whether his substantial rights were affected? Yes, and as I noted in the brief, they are not. There is nothing that the defendant, that Mr. Chavez Morales, would be allowed to do without the term of supervised release that he is now not allowed to do. The district court could have imposed a term of supervised release that commanded that he never reentered to the United States, whether or not he gets permission. The district court could have, as in Zange, imposed a term of home confinement that is more restrictive than the absence of that term, but that's not what happened here. The district court imposed the standard conditions of supervised release in an unsupervised format and commanded that Mr. Chavez Morales not illegally return to the United States. Very briefly, Mr. Butcher mentioned the case of the United States v. Zange, and in that case, the court said it's not appropriate simply to assume that the sentencing court's reason for opposing a prison term extends to the decision regarding the absence of the term of home confinement. Now, regarding supervised release, maybe your answer to this question is going to be the same as the last one, but was there error in this case under Zange in the manner in which supervised release was imposed? I see that my time is up. May I please answer your question expeditiously? If you would, thank you. In Zange, there is no record that I can see in the case itself about a dialogue between the defense attorney and the court about a term of supervised release. There is no request by the defendant to impose a term of supervised release as an alternative to more prison, as we see in Volume 3 of the record here on page 5, and there is no explanation by the district court, as we have in the paragraph in Volume 3 on page 16, about a term of supervised release. There is no explanation about the explicit deterrent motive of the court in imposing the term of supervised release. So Zange is the law, but the United States takes the position that Chief Judge Johnson did not violate Zange in the way that he explained himself as shown in this particular record. Thank you. Thank you, counsel. And subject to any other questions, that's the time I have. Thank you. May it please the Court, as to Judge McKay's point, I think that's one of the pernicious things about what happened here. You know, we're not asking that there's some super high standard, but when the reason given before the court for the upper departure sort of doesn't make sense, and is inconsistent with the mitigation factors that were argued, and the court doesn't address that. That's why I think in this particular case that it did not give meaningful consideration to the mitigation factors. If the court's real complaint was criminal history was insufficient, there is analysis that does not support that. And I think that's one of the reasons that this court has approved and the science commission has approved that the court could have engaged it. And that sort of seems where the court was going. But to say that there's this sort of fictional objective disrespect for the laws, why am I going to do an upper departure, I think did violate the rights and does require a remand. As to the supervised release issue, it's very important that courts state the reasons, especially when they give non-guideline sentence. As I mentioned in 3853, did not bring in 3553A2, but did bring in the requirement that there not be disparity between defendants. When the court in this case imposed a maximum term of supervised release that was not consistent with the guidelines, it does start risking a disparity. And without a reason given, this court has no reason, ability to judge it. Reason is the soul of all law, but without reason, you have a soulless sentence that does affect the public's view of is this, you know, is the court, you know, the integrity of the court and the integrity of the system. So in this particular case, and once again, I'd go back to Steele as I think, just briefly as I think that this is why it'd be helpful to have a rule requiring defense counsel, or giving the defense counsel and the government an opportunity to comment on sentences once they're pronounced, which I think would have cleared up some of these issues here today. But once again, Your Honor, we ask that this court remand this case for a new sentencing before the sentencing court. We believe both to give the court an opportunity to review the mitigation evidence and not base a sentence upon an improper factor, and to either not argue or not impose a maximum term of supervised release in violation of 5D1.1, or if the court does, comply with 3553C and 3853A. Thank you, Your Honor.